1   Jordan L. Lurie (SBN 1300013)
    Jordan.Lurie@capstonelawyers.com
2   Tarek H. Zohdy (SBN 247775)
    Tarek.Zohdy@capstonelawyers.com
3   Capstone Law APC
    1840 Century Park East, Suite 450
4   Los Angeles, California 90067
    Telephone:  310.556.4811
5   Facsimile:   310.943.0396

6

7   Attorneys for Plaintiffs Humberto Daniel Klee
    and David Wallak

8

9              UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

11

12  HUMBERTO DANIEL KLEE and            Case No. CV12-08238 DDP (PJWx)
    DAVID WALLAK, individually, and     01151-ABC(PJWx)
13  on behalf of a class of similarly
    situated individuals,               Hon. Dean D. Pregerson
14
             Plaintiffs,               **CLASS ACTION**
15
    v.                                  **NOTICE OF MOTION AND**
16                                      **UNOPPOSED MOTION FOR**
    NISSAN NORTH AMERICA, INC.          **PRELIMINARY APPROVAL OF**
17                                      **CLASS ACTION SETTLEMENT;**
             Defendant.                 **MEMORANDUM OF POINTS AND**
18                                      **AUTHORITIES**

19                                      Date:      August 12, 2013
                                        Alternative Date: July 11, 2013
20                                      (Requested per Joint Stipulation to
                                        Shorten Time for Hearing on
21                                      Unopposed Motion for Preliminary
                                        Approval of Class Action Settlement,
22                                      submitted on July 3, 2013)
                                        Time:      10:00 am
23                                      Place:     Ctrm. 3

24

25

26

27

28

1    **TO THE COURT, PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2    **PLEASE TAKE NOTICE** that on August 12, 2013 at 10:00 a.m., or on

3    July 11, 2013 at 10:00 a.m. if the parties' Joint Stipulation to Shorten Time for

4    Hearing on Unopposed Motion for Preliminary Approval of Class Action

5    Settlement submitted on July 3, 2013 is granted, or as soon thereafter as the

6    matter may be heard, in Courtroom 3 of the above-captioned Court, located at

7    312 N. Spring Street, Los Angeles, CA 90012, the Hon. Dean D. Pregerson

8    presiding, Plaintiffs will move this Court to rule as follows:

9        1.      Preliminarily approve the settlement described in the Settlement

10   Agreement and the Class Notice, attached as Exhibits 1 and 2, respectively, to

11   the Declaration of Jordan L. Lurie in Support of Plaintiffs' Motion for

12   Preliminary Approval of Settlement ("Lurie Decl.") submitted concurrently;

13       2.      Conditionally certify, for settlement purposes only, the Settlement

14   Class;

15       3.      Approve distribution of the proposed Notice of Class Action

16   Settlement to the Settlement Class;

17       4.      Appoint Plaintiffs Humberto Daniel Klee and David Wallak as

18   Class Representatives;

19       5.      Appoint Capstone Law APC as Class Counsel;

20       6.      Appoint Kurtzman Carson Consultants LLC as the Settlement

21   Administrator; and

22       7.      Set a hearing date for final approval of the class action settlement.

23       This Motion is based on: (1) this Notice of Motion and Motion; (2) the

24   Memorandum of Points and Authorities in Support of Motion for Preliminary

25   Approval of Class Action Settlement; (3) the Lurie Decl. and exhibits thereto;

26   (4) the [Proposed] Order Granting Preliminary Approval; (5) the records,

27   pleadings, and papers filed in this action; and (6) on such other documentary and

28   oral evidence or argument as may be presented to the Court at the hearing of this

1    Motion.

2    ///

3    Dated:  July 8, 2013                    Respectfully submitted,

4                                            Capstone Law APC

5

6                                      By:  /s/ Jordan Lurie
                                           Jordan Lurie
7                                          Tarek H. Zohdy

8                                          Attorneys for Plaintiffs
                                           Humberto Daniel Klee and David Wallak
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................. 1

II.  FACTS AND PROCEDURE .................................................. 2

    A.  The Litigation .................................................................. 2

    B.  The Parties' Settlement ................................................. 4

    C.  Proposed Post-Preliminary Approval Schedule .................... 7

III.  THE NOTICE PLAN SATISIFES THE REQUIREMENTS OF
    RULE 23 .......................................................................... 8

IV.  THE SETTLEMENT SATISIFES THE STANDARDS FOR
    PRELIMINARY APPROVAL .................................................. 10

    A.  Overview of the Class Action Settlement Process and the
        Role of Preliminary Approval ........................................... 10

    B.  The Proposed Settlement Is Well Within the Range of
        Reasonableness Warranting Preliminary Approval and
        Justified in Light of the Risks of Continued Litigation ............ 12

    C.  Conditional Class Certification Is Appropriate for
        Settlement Purposes ...................................................... 13

        1.  The Proposed Class Meets the Requirements of
            Rule 23 ............................................................... 13

        2.  The Proposed Class Is Sufficiently Numerous and
            Ascertainable ...................................................... 14

        3.  There are Questions of Law and Fact Common to the
            Class .................................................................. 15

        4.  Plaintiffs' Claims Are Typical of the Proposed
            Settlement Class .................................................. 15

5.  Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the Interests of the Proposed Settlement Class ........................................................................ 16

6.  Common Issues Predominate Over Individual Issues .................. 17

7.  Class Settlement Is Superior to Other Available Means of Resolution ................................................................ 17

V.  CONCLUSION .......................................................................... 18

NOT. OF MOTION & MOTION FOR PRELIM. APPROV.; MEM. P. & A.

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ......................... 12

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) .............................................. 14

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ............................................ 16

*Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524 (N.D. Cal. 2004).............. 15, 17

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ................................................................................................................. 14

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)............................... 15, 17

*Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) ........................................................................................... 15

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ........................................... 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................... *passim*

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1998) .................. 14

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)...................................................................................... 13

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d. Cir. 1995)............................................................................................... 12

*In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005).................................................................................................................. 11

*Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007) ....................................................... 14

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007)................................................................................................................ 16

*Mazza v. American Honda Motor Co.*, No. 09-55376 (9th Cir. Jan 12, 2012)........................................................................................................... 13

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008)................. 15

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ........................................... 16

*Sadowska v. V'wagen Grp. Of Amer.*, Civil Minutes, No. CV11-
    00665-AHM (AGRx), Dkt. No 80 (C.D. Cal. Jan. 1, 2013) .......................... 13

*Swanson v. American Consumer Industries*, 415 F.2d 1326 (7th Cir.
    1969) ................................................................................................................. 14

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D.
    Cal. 2009) ........................................................................................................ 14

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) ........... 15, 18


**FEDERAL STATUTES**

28 U.S.C. § 1332(d) (Class Action Fairness Act of 2005 (CAFA))) ................... 9

28 U.S.C. § 1715 ................................................................................................. 9

Fed. R. Civ. P. 23 ...................................................................................14, 15, 17

Fed. R. Civ. P. 23(a) ..................................................................................... 14, 16

Fed. R. Civ. P. 23(a)(1) .................................................................................... 13

Fed. R. Civ. P. 23(a)(2) .................................................................................... 14

Fed. R. Civ. P. 23(a)(4) .................................................................................... 16

Fed. R. Civ. P. 23(b)(2) ................................................................................ 2, 17

Fed. R. Civ. P. 23(b)(3) ..........................................................................2, 8, 16, 17

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................ 8

Fed. R. Civ. P. 23(e) ....................................................................................... 11

Fed. R. Civ. P. 23(e)(1) ..................................................................................... 8

SECONDARY AUTHORITIES

4 Newberg & Conte (4th Ed. 2002).................................................................. 11

Manual for Complex Litigation (4th Ed. 2004).......................................10, 11, 13

NOT. OF MOTION & MOTION FOR PRELIM. APPROV.; MEM. P. & A.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs hereby seek preliminary approval of the Settlement of this consumer class action.[1]  The Settlement Agreement is attached as Ex. 1 to the Declaration of Jordan L. Lurie in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Lurie Decl."). The proposed Class Notice ("Notice of Proposed Settlement") is attached as Ex. 2 to the Lurie Decl.  The proposed Preliminary Approval Order is attached as Ex. 3 to the Lurie Decl.

The First Amended Complaint alleges that the 2011-2012 Nissan LEAF, an electric vehicle powered by a Lithium-ion battery, loses battery capacity over time that causes the vehicles to lose the driving range represented by Defendant Nissan North America ("Nissan" or "NNA").  To remedy the alleged defect, Plaintiffs' FAC seeks, *inter alia*, injunctive relief in the form of a new or extended warranty that provides additional battery coverage due to capacity loss.

The Settlement negotiated by Plaintiffs' Counsel provides just what Plaintiffs asked for: a new battery capacity warranty for all 2011-2012 Nissan LEAFs nationwide.  Pursuant to the Settlement, Nissan has agreed to provide new "Lithium-ion Battery Capacity Coverage," which is coverage added to, and made a part of, the 2011 and 2012 Nissan New Electric Vehicle Limited Warranty.

Under the new coverage, Nissan will cover any repairs needed to return battery capacity to a level of nine bars (approximately 70% capacity) on the vehicle's battery capacity level gauge for a period of 60 months or 60,000 miles, whichever occurs first.  If necessary, the Lithium-ion battery components will be repaired or replaced in eligible vehicles and the original Lithium-ion battery will be returned to the vehicle.  If repair is not possible, the Lithium-ion battery will

---

[1] All capitalized terms have the same definitions as in the Settlement Agreement, ¶¶ 1-27.

Page 1

Not. of Motion & Motion for Prelim. Approv.; Mem. P. & A.

be replaced in eligible vehicles with either a new or remanufactured Lithium-ion battery.   This is the same coverage that Nissan also has agreed to implement on a going forward basis for all 2013 LEAF vehicles.  The value of the new warranty coverage to Class Members exceeds $10 million.  *See* Lurie Decl., ¶ 20.

All Class Members automatically receive the new battery capacity warranty terms, unless they opt-out of the Settlement.  Notice of the new warranty is contained in the Class Notice which will be sent by mail to all Class Members.[2]  Nissan also has separately mailed letters to all Class Members advising them of the new battery warranty terms and enclosing labels with the new warranty terms to affix to Class Members Warranty Booklets.  *See* Lurie Decl., Ex. 4.  The Settlement terms also will be available on a dedicated website to be established by the Settlement Administrator.

Accordingly, and for all the reasons set forth below, the Settlement is fair, reasonable and adequate, and the Notice plan is effective and should be approved.  Therefore, Plaintiffs hereby seek an order:  (1) granting preliminary approval of the Settlement and conditionally certifying the Settlement Class; (2) appointing Plaintiffs as Class Representatives; appointing Capstone Law APC as Class Counsel; and appointing Kurtzman Carson Consultants LLC as the Settlement Administrator; (4) approving the form of Notice to the Class Members;  and (5) setting a date for the Final Approval Hearing.

## II.   FACTS AND PROCEDURE

### A.   The Litigation

The Nissan LEAF is an all-electric, battery-powered car built and sold throughout the United States by Nissan.  The LEAF is propelled by an electric motor with a rechargeable lithium ion battery pack.  LEAF owners recharge the battery pack through publicly available and at-home charging stations.

---

[2] The parties seek approval pursuant to Rule 23(b)(3), not 23(b)(2), so that Notice will be mailed providing for Class Members to opt-out of the relief, if they so choose.

Prior to filing this action, Plaintiffs' Counsel thoroughly researched and investigated the operation of Nissan LEAF and the electric battery system.  As part of their pre-filing investigative work, Plaintiffs' Counsel, *inter alia*, researched publicly available materials and information from the National Highway Traffic and Safety Administration ("NHTSA"); reviewed Nissan manuals and service bulletins regarding the LEAF and the alleged defect; reviewed federal regulations and applicable standards regarding electric vehicles and their operation; studied the tracked comments from LEAF owners on websites and blogs; reviewed consumer and LEAF owner complaints and concerns and vetted those concerns through Plaintiff's engineers and consultants. Lurie Decl., ¶¶ 8-9.

Plaintiffs' Counsel's investigation culminated in a class action complaint filed on September 24, 2012.   On December 14, 2012, Plaintiffs filed a First Amended Complaint that expanded the geographical scope of the proposed class to include all owners and lessees of 2011-2012 model year Nissan LEAF vehicles nationwide and omitted Nissan Motors Co. which had not been served in the instant action.  The named plaintiffs are Humberto Daniel Klee, a California resident, and David Wallak who lives in Phoenix, Arizona.  Just 13 months into the lease, Mr. Klee's LEAF battery lost two "bars," a capacity reduction that resulted in a reduction in his driving range. [3]  Within just two weeks of Mr. Wallak's purchase, his LEAF similarly lost two bars of battery capacity.

Plaintiffs alleged that the 2011-2012 model year Nissan LEAF vehicles contained a "thermal management" defect; that the batteries lose battery capacity

---

[3] The LEAF's battery capacity is measured in "bars," with 12 bars being the full capacity for a new LEAF. When the battery pack loses capacity, bars begin to disappear from the "capacity gauge" (a 12-segment gauge to the immediate right of the LEAF's 12-segment state of charge gauge). Capacity loss is not linear as measured by the bars.  Rather, the first capacity bar loss represents a 15% loss, while each subsequent bar represents a 6.25% loss.

1  over time at an excessive rate when operated in a high temperature environment;

2  and that the vehicles do not have the driving range represented by Nissan.

3  Plaintiffs brought claims against Nissan for breach of implied warranty; unjust

4  enrichment; intentional misrepresentation; negligent misrepresentation; and

5  violation of various California and Arizona consumer protection statutes.  The

6  FAC sought primarily injunctive relief in the form of a new or extended

7  warranty.  *See e.g.*, FAC, ¶ 2(" To remedy Defendant's misconduct, Plaintiff

8  Humberto Daniel Klee brings this action for injunctive relief, pursuant to

9  California's consumer protection statutes, on behalf of himself and all current

10  owners or lessees in the United States of 2011-2012 Nissan Leaf vehicles

11  (collectively, "Class Vehicles"))."  See also FAC ¶¶ 69-70.

12         Nissan filed an Answer to the FAC on January 11, 2013.

13      **B.     The Parties' Settlement**

14         Commencing in November 2012, the parties began exploring a possible

15  resolution of this action, following a telephonic conference between

16  representatives of Nissan and Plaintiff's Counsel to address issues raised by and

17  in the complaint and a letter Plaintiffs' Counsel sent Nissan a letter detailing

18  Plaintiff's requested settlement relief.  Lurie Decl., ¶ 9.

19         Counsel for the parties subsequently met in person in Los Angeles for two

20  days of face-to-face negotiations and to discuss settlement terms.  On

21  December 5, 2012, the parties reached agreement on material terms and executed

22  a Term Sheet memorializing those terms.   The preliminary agreement

23  contemplated that Plaintiffs would conduct sufficient discovery necessary to

24  confirm the facts proffered by Nissan and that the Settlement terms are fair,

25  adequate and reasonable.  Lurie Decl., ¶ 10.

26         While it is not uncommon in automotive defect class actions for lawsuits

27  suits to drag on beyond the time that Class Members actually still own their cars,

28  here the settlement negotiations yielded a solution that benefits 2011-12 model

year LEAF drivers while they still own and operate their cars.  The material terms of the Settlement are as follows:[4]

- The Settlement Class is all former and current owners and lessees of a 2011-2012 model year Nissan LEAF vehicle in the United States and its territories, including Puerto Rico.  Settlement Agreement, ¶¶ 2, 24.

- Nissan will modify the New Electric Vehicle Limited Warranty for the Nissan LEAF to add new coverage against battery capacity loss for up to 60 months or 60,000 miles, whichever comes first.  The new coverage will cover and pay for any repairs or replacement necessary to return battery capacity to nine "bars;" and, if possible, existing batteries would be repaired; but if repair were not possible, the batteries would be replaced with either a new or re-built battery. Settlement Agreement, ¶¶8, 33.

- Upon final approval, the parties shall be deemed to have provided mutual releases of all Released Claims.  "Released Claims" is carefully defined and limited to all claims "which were or could have been brought against NNA and the Related Parties, or any of them, based upon or related in any way to the driving range or battery capacity of the Class Vehicles," as further detailed in the Settlement Agreement.  Settlement Agreement, ¶¶ 19, 57-59.

- The Settlement Agreement includes appropriate provisions for members of the Settlement Class to exclude themselves from the Settlement and make any objections to the Settlement's terms or procedures.    Settlement Agreement, ¶¶ 49-56.

---

[4] This summary description is qualified in its entirety by reference to the parties' Settlement Agreement, attached as Ex. 1 to the Lurie Decl. and which provides greater details as to the specific terms and conditions that apply to each Settlement term and benefit pursuant to the Settlement Agreement.

-     NNA agrees to pay attorneys' fees and costs in an amount not exceed $1,900,000 and incentive fees in an amount not to exceed $5,000 to each named Plaintiff. Settlement Agreement, ¶¶ 31, 67-69. The fees and costs were separately negotiated after the Parties agreed on the other material Settlement terms.  Lurie Decl., ¶ 10.

8.     The parties then conducted over five (5) months of confirmatory discovery.  During that time, Plaintiffs' Counsel provided comprehensive document requests to which Nissan responded.   Nissan provided, and Plaintiffs' counsel analyzed, over 4,000 pages of documents and data covering Plaintiffs' contentions in the FAC and a broad range of issues concerning the LEAF battery that could impact the Settlement terms. In the course of the confirmatory discovery process, Nissan produced line-by-line documentation as to each vehicle eligible to be part of the Settlement Class on a nationwide basis.  On the basis of that documentation, the total number of eligible class members is estimated to be 18,588.  Lurie Decl. ¶¶ 17-18.

Plaintiffs' Counsel also undertook to complete a rigorous analysis of the Settlement's responsiveness to Class Members' concerns about the LEAF battery life as expressed on blogs and in Internet message boards.  Lurie Decl., ¶ 19.  For example, Class Members were concerned about manipulation of the battery capacity gauge by dealers or third parties to avoid the capacity warranty.   To that end, Plaintiffs' Counsel sought and obtained a detailed declaration under oath from a senior manager responsible for the Nissan LEAF who concluded that it would be nearly "impossible for a dealer technician to manipulate the vehicle's battery capacity gauge or to install a new program that would show a different battery capacity than that of the vehicle's actual battery." Lurie Decl., ¶ 19.

Plaintiffs' Counsel also received detailed responses from Nissan representatives regarding other issues that had been raised by Nissan LEAF owners, such as:  why Nissan determined to restore capacity to only 9 bars (or

Page 6

Not. of Motion & Motion for Prelim. Approv.; Mem. P. & A.

approx. 70% capacity); why there was not more robust coverage for hot climates; how the 9 bars under the new warranty would be verified; and whether the new warranty preclude buy-backs by NNA for unsatisfied customers.  Lurie Decl., 21.

Plaintiffs' Counsel also sought to determine the aggregate value of the new warranty coverage to the Settlement Class Members.  To that end, Plaintiffs' Counsel sought and received a declaration from Nissan confirming that the valuation of the Settlement terms to Class Members exceeds $10 million.  Lurie Decl., ¶ 20.  Plaintiffs' Counsel also have retained an accountant and valuation expert to conduct an independent analysis of the Settlement valuation.  Lurie Decl., ¶ 20.

### C.    Proposed Post-Preliminary Approval Schedule

The following chart summarizes the key tasks and timeframes contemplated by the Settlement Agreement (and the approximate dates for completion, provided that the Preliminary Approval Order is entered on July 11, 2013, per the parties' Joint Stipulation to Shorten Time for Hearing on Unopposed Motion for Preliminary Approval of Class Action Settlement submitted on July 3, 2013):

| Event | Number of Days to Calculate | Proposed Dates |
| --- | --- | --- |
| Preliminary Approval Order Entered | | July 11, 2013 |
| Notice Mailed | Preliminary Approval + 60 Days | September 9, 2013 |
| Plaintiffs' Final Approval Papers – Fee Motion | Fairness Hearing – 50 Days | September 26, 2013 |
| Objection Deadline | Fairness Hearing – 35 | October 15, 2013 |

Page 7

Not. of Motion & Motion for Prelim. Approv.; Mem. P. & A.

| | Days | |
|---|---|---|
| Administrator Submits Declaration Attesting to Completion of Notice | Fairness Hearing – 28 Days | October 21, 2013 |
| Plaintiffs' Final Approval Papers | Fairness Hearing – 28 Days | October 21, 2013 |
| Exclusion/Opt-Out Deadline | Fairness Hearing – 21 Days | October 28, 2013 |
| Defendant's Final Approval Papers | Fairness Hearing – 14 Days | November 4, 2013 |
| Defendant's Final Approval Papers re Fees | Fairness Hearing – 7 Days | November 12, 2013 |
| Fairness Hearing | | November 18, 2013 |

## III.   THE NOTICE PLAN SATISIFIES THE REQUIREMENTS OF RULE 23

Upon certifying a 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  In addition, Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."

The proposed Notice plan satisfies these requirements.  Settlement Agreement ¶¶ 34-38.   Under the plan, Nissan will send direct mail notice postage prepaid, via the United States Postal Service directly to all current and former owners and lessees of the Class Vehicles.  The Notice shall be substantially in the same form as the exemplar submitted as Exhibit A to the Settlement Agreement and attached separately to the Lurie Decl. as Ex. 2.  The

Notice includes all of the information required by Rule 23(c)(2)(B), including a description of the action and class claims, and Class Members' rights to opt-out or comment on the proposed Settlement, including the fee request.   Nissan will pay all notice and related administration costs.

Under the Notice plan, Nissan will provide the Settlement Administrator, Kurtzman Carson Consultants LLC, with Vehicle Identification Numbers of all Class Vehicles, from NNA's own databases.  Using this Vehicle Identification Number information, the Settlement Administrator will obtain address data for the Settlement Class from a third-party, such as R.L. Polk, that maintains databases related to the automobile industry and which specializes in obtaining such information from, *inter alia*, the Departments of Motor Vehicles of all 50 States in the United States and its territories, including Puerto Rico.  The Settlement Administrator will review the address data provided by NNA and/or any third-party vendor, check addresses for validity, eliminate duplications and process the addresses through the National Change of Address database for the purpose of updating the addresses. The Settlement Administrator shall utilize skip-trace or other searches, in addition to the United States Postal Service to attempt, on a one-time basis, to secure updated addresses for any Settlement Class Member whose Notice is returned as undeliverable and resend the Notice to the updated address.

The Settlement Administrator also shall prepare and provide the notices required by the Class Action Fairness Act of 2005, Pub. L. 109-2 (2005), including, but not limited to, the notices to the United States Department of Justice and to the Attorneys General of all States in which Settlement Class Members reside, as specified in 28 U.S.C. § 1715.  Plaintiffs' Counsel and NNA's Counsel shall cooperate in the drafting of such notices, and Plaintiffs' Counsel shall provide to NNA's Counsel any and all information in its possession necessary for the preparation of these notices.

In addition, the Settlement Administrator shall maintain a toll-free number and an e-mail address for Settlement Class Members to seek answers to questions about the Settlement and Notice. The Settlement Administrator also shall create and maintain a dedicated website for information about this Settlement, on which the Settlement Administrator will make available for download in portable document format (1) the Notice, as approved by the Court, and other documents and pleadings as agreed by the parties; and (2) contact information for the Settlement Administrator's toll-free number and e-mail address.  The Settlement Administrator shall also provide a copy of the Notice to anyone who requests the Notice.  No later than twenty-eight (28) days prior to the Fairness Hearing, the Settlement Administrator shall provide an affidavit to the Court, with a copy to Plaintiffs' Counsel and NNA's Counsel, attesting that Notice was disseminated in a manner consistent with the terms of this Settlement Agreement, or those otherwise required by the Court.

In addition to all of the foregoing, Nissan also mailed on June 7, 2013 a separate letter to all Class Members notifying them of the proposed relief.  The letter also enclosed labels describing the new warranty coverage to all Class Members to affix to Class Members' Warranty Information Booklets.   The letter was sent after the parties negotiated the settlement in this action and contains the same terms as set forth herein and in the Class Notice.   Lurie Decl., ¶ 5 and Ex. 4 thereto.

## IV.   THE SETTLEMENT SATISIFES THE STANDARDS FOR PRELIMINARY APPROVAL

### A.   Overview of the Class Action Settlement Process and the Role of Preliminary Approval

A class action settlement like the one proposed here must be approved by the Court to be effective.  *See* Fed. R. Civ. Proc. 23(e).  Court approval occurs in three steps: (1) a preliminary approval hearing, at which the court considers

whether the proposed settlement is within the range of reasonableness meriting final approval; (2) a notice and comment stage, during which class members are informed about the proposed settlement and given an opportunity to object; and (3) a "formal fairness hearing," or final approval hearing, at which the court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class.  *See* Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004).

Whereas at the final approval stage the Court must decide whether the parties negotiated a settlement that is fair, reasonable, and adequate to class members, at the preliminary approval stage, the Court need only decide whether the settlement falls within a range of reasonableness possibly meriting final approval (i.e., whether it would be worthwhile to give the class notice of the settlement and proceed with a formal fairness hearing).  *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ("To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out."); 4 Newberg & Conte, § 11.25.

If the settlement has no obvious deficiencies, then it falls within the range of possible approval.  *See In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).  In other words, the Court makes only a preliminary determination of the settlement's fairness, reasonableness, and adequacy, pointing out any settlement terms that are so unacceptable at the outset that a formal fairness hearing would be a waste of time.  *See* Manual for Complex Litigation, § 21.632; 4 Newberg & Conte, § 11.25.

Plaintiffs hereby ask the Court to take the first step in the settlement approval process and grant preliminary approval of the Settlement.  Plaintiffs further request that the Court certify the Settlement Class; appoint Plaintiffs as

1   Class Representatives; appoint Capstone Law APC as Class Counsel; appoint

2   Kurtzman Carson Consultants LLC as the Settlement Administrator; order

3   dissemination of the proposed Class Notice; and set a date for the Final Fairness

4   Hearing.

5       **B.    The Proposed Settlement Is Well Within the Range of**

6       **Reasonableness Warranting Preliminary Approval and Justified**

7       **in Light of the Risks of Continued Litigation**

8       The Settlement is well within the range of reasonableness for granting

9   preliminary approval.  As described in detail above, the Settlement provides

10  relief that addresses and resolves the issues raised in the FAC and by  Class

11  Members.  The reality is that any case against a major automotive manufacturer

12  alleging a defect in thousands of vehicles has the potential to take up significant

13  amounts of attorneys' time and the court's resources.   Here, the Settlement

14  provides actual relief to current owners of Class Vehicles without having to wait

15  until after years of litigation. The Settlement does not have any obvious or

16  hidden deficiencies. Nor does the Settlement exhibit preferential treatment

17  toward certain class members.

18      Moreover, Nissan would have aggressively opposed class certification.

19  "The value of a class action 'depends largely on the certification of the class,'

20  and  . . . class certification undeniably represents a serious risk for plaintiffs in

21  any class action lawsuit." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392

22  (C.D. Cal. 2007),  *quoting In re GMC Pick-Up Truck Fuel Tank Prods. Liab.*

23  *Litig.*, 55 F.3d 768, 817 (3d. Cir. 1995).   Even if the Class was certified, there

24  would nonetheless be the genuine risk that the Court would revisit its ruling and

25  decertify, or not find the action suitable for certification as a nationwide or a

26  multi-state class, per the amended complaint.[5]  Further, it is difficult to see how

27

28  _____

[5] *See*, e.g.,  *Mazza v. American Honda Motor Co.*, No. 09-55376 (9th Cir. Jan 12, 2012) (reversing certification of nationwide class composed of

1   even a successful class certification motion – likely 12 to 16 months hence –

2   would have created a basis for relief more comprehensive than that provided by

3   the Settlement Agreement.

4       All of the Settlement's terms were negotiated at arm's length by

5   experienced counsel knowledgeable in complex class litigation; as such, the

6   Settlement is accorded a presumption of fairness. *See*, e.g., *In re Austrian &*

7   *German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-174 (S.D.N.Y. 2000)

8   ("Once the Settlement is presumed fair, it is not for the Court to substitute its

9   judgment as to a proper settlement for that of such competent counsel.

10  Additionally, the negotiated attorneys' fees are not at the expense of the

11  Settlement Class Members.  In fact, Plaintiffs' counsel separately negotiated the

12  terms of their attorneys' fees and reimbursement of litigation expenses, so that

13  the Settlement Class Members' interests would not even be potentially

14  compromised. *See* Lurie Decl., ¶ 12.

15      Given the Settlement's favorable terms and the manner in which these

16  terms were negotiated, the proposed Settlement should be viewed as being a fair,

17  reasonable, and adequate compromise of the issues in dispute for the purposes of

18  preliminary approval.  Accordingly, the Court should grant preliminary approval

19  of the Settlement, order dissemination of Class Notice, and calendar the Final

20  Fairness Hearing.

21      **C.      Conditional Class Certification Is Appropriate for Settlement**

22              **Purposes**

23              **1.      The Proposed Class Meets the Requirements of Rule 23.**

24      Before granting preliminary approval of the Settlement, the Court should

25  ────────────────────────

26  consumers seeking relief under California's consumer protection laws).  *But see*
    *Sadowska v. V'wagen Grp. Of Amer.*, Civil Minutes, No. CV11-00665-AHM

27  (AGRx), Dkt. No 80 (C.D. Cal. Jan. 1, 2013) (Matz, J.) (preliminarily approving
    settlement of nationwide class concerning allegations of auto-related defect and

28  holding *Mazza* not per se an impediment to certification and approval of such
    settlements).

1    determine that the proposed Settlement Class meets the requirements of Rule 23.

2    *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) Manual for Complex

3    Litigation, § 21.632.   An analysis of Rule 23's requirements --  commonly

4    referred to as numerosity, commonality, typicality, adequacy, and predominance

5    --  shows that certification of this proposed Settlement Class is appropriate.

### 2.       The Proposed Class Is Sufficiently Numerous and Ascertainable

8         The numerosity requirement is met where "the class is so numerous that

9    joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Courts have

10   held a class to be sufficiently numerous if it consists of 40 or more members.

11   See, e.g., Vasquez *v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121

12   (E.D. Cal. 2009 (numerosity is presumed at a level of 40 members);

13   *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)

14   ("numerosity is presumed at a level of 40 members"); *Swanson v. American*

15   *Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (numerosity satisfied

16   with class of 40); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D.

17   Cal. 1998) (same); *Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 U.S.

18   Dist. LEXIS 47518, *19 (N.D. Cal. June 20, 2007) ("numerosity may be

19   presumed when the class comprises forty or more members").

20        Here, the proposed Settlement Class consist of

> All current and former owners and lessees (excluding
> fleet and government purchasers) of 2011-2012 model
> year Nissan LEAF vehicles in the United States.

23   FAC, ¶ 13.  During discovery, Nissan produced line-by-line documentation as to

24   each vehicle eligible to be part of the Settlement Class on a nationwide basis.

25   On the basis of that documentation, the total number of eligible class members is

26   estimated to be 18,588.  *See* Lurie Decl., ¶ 18.

1

2

### 3.     There are Questions of Law and Fact Common to the Class

3     The second Rule 23(a) requirement is commonality, which is satisfied "if

4 there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

5 The "commonality requirement has been 'construed permissively,' and its

6 requirements deemed minimal.'"  *Estrella v. Freedom Fin'l Network*, 2010 U.S.

7 Dist. LEXIS 61236 (N.D. Cal. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150

8 F.3d 1011, 1019-1020 (9th Cir. 1998).

9     Here, each of the eligible 18,588 Class Members bought or leased a 2011-

10 12 model-year LEAF, and thus experienced the same alleged deficiencies related

11 to the LEAF's battery system.  It follows that the principal common questions of

12 law and fact which a trier of fact would need to resolve are whether the LEAF's

13 batteries are defective, and if so, whether Nissan had an obligation to inform

14 consumers of the defect.

15     The need to determine whether an inherent defect exists not only satisfies

16 Rule 23's commonality requirement, it raises the very type of overarching

17 common question that has driven class certifications in other automotive defect

18 cases.  *See*, *e.g.*, *Hanlon*, 150 F.3d at 1020 (defective rear liftgate latches);

19 *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 595-97 (C.D. Cal. 2008)

20 (defective flywheels); *Chamberlain v. Ford Motor Co.*, 223 F.R.D. 524, 526

21 (N.D. Cal. 2004) (defective engine intake manifolds); *Daffin v. Ford Motor Co.*,

22 458 F.3d 549, 552 (6th Cir. Ohio 2006) (defective throttle body assembly); *see*

23 *also Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1172 (9th Cir. 2010)

24 (reversing denial of class certification in a case regarding allegedly defective tire

25 alignment).

### 4.     Plaintiffs' Claims Are Typical of the Proposed Settlement Class

26

27

28     "Like the commonality requirement, the typicality requirement is

'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020).   "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007).

The Rule 23 typicality requirement is thus "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

Here, Plaintiffs assert that Class Members' claims arising from the LEAF batteries are reasonably coextensive with the legal claims asserted by the named Plaintiffs.  Each Class Member's claim arises from the same underlying conduct-namely, Nissan's conduct in relation to addressing the deficiencies alleged in the LEAF battery system.  In addition, Class Members have similar interests in the extended remedy being provided by the proposed settlement.

### 5. Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

The final Rule 23(a) criterion for approval asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4.  This requirement is satisfied if: (1) the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2) plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

Here, neither of the two Plaintiffs has individual interests in this litigation that conflict with the best interests of the class.  To the contrary, each named

1   Plaintiff as well as each Class Member has a common interest in obtaining relief

2   from Nissan as a result of having experienced the deficiencies alleged as to the

3   LEAF battery system.

4        In addition, the named Plaintiffs are represented by counsel well versed in

5   prosecuting class actions and who are qualified to be formally appointed as Class

6   Counsel.  *See* Lurie Decl., ¶ 22.

7                    **6.        Common Issues Predominate Over Individual Issues**

8        "In addition to meeting the conditions imposed by Rule 23(a), the parties

9   seeking class certification must also show that the action is maintainable under

10   Fed. R. Civ. P. 23(b)(1), (2) or (3)."  *Hanlon*, 150 F.3d at 1022.

11        Here, the proposed class is maintainable under Rule 23(b)(3), as common

12   questions predominate over any questions affecting only individual members and

13   class resolution is superior to other available methods for a fair resolution of the

14   controversy.  *Id.* (citing Fed. R. Civ. P. 23(b)(3)).

15        Class members' claims depend primarily on whether LEAF batteries suffer

16   from an inherent battery defect, and thus raise just the sort of predominantly

17   common questions courts have found to justify class treatment.  *See*, e.g.,

18   *Hanlon*, 150 F.3d at 1022-1023 (certification of alleged defect concerning rear

19   liftgate latches); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal.

20   2004) (certification of alleged defect concerning engine intake manifolds);

21   *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (certification of

22   alleged defect concerning throttle body assembly).

23        Because there is a predominance of common questions of law or fact, as

24   required by Rule 23, certification is proper here.

25                    **7.        Class Settlement Is Superior to Other Available**

26                          **Means of Resolution**

27        Similarly, there can be little doubt that resolving all Class Members'

28   claims through a single class action is superior to a series of individual lawsuits.

"From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery."  *Hanlon*, 150 F.3d at 1023.  Indeed, the Settlement's terms, negotiated on behalf of the class, demonstrates the advantages of a unified bargaining and resolution process.

Moreover, it is unlikely that the prospective class members could have found comparable, or any, relief by way of individual lawsuits. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification.").   In this and other automotive defect cases, "[f]orcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, [would be] an inferior method of adjudication." *Id.* at 1176.  "There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023.

As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Settlement Class for preliminary approval as proposed by the Parties is appropriate.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and schedule a date to conduct the final approval hearing.

Dated:  July 8, 2013                         Respectfully submitted,

Capstone Law, APC

By: /s/ Jordan L. Lurie
     Jordan L. Lurie
     Tarek H. Zohdy