UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| HUMBERTO DANIEL KLEE AND DAVID WALLAK, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>Defendant. | No. 2:12-cv-08238-BRO-PJW<br><br>Hon. Beverly Reid O'Connell<br><br>NOTICE OF SUPPLEMENTAL AUTHORITIES |

For the convenience of the Court and counsel, Objectors attach the following authorities, which were cited during the fairness hearing:

**1.** Cal. Com. Code § 2209(1) ("An agreement modifying a contract within this division needs no consideration to be binding.")

**2.** Paskell v. Nobility Homes, Inc., 871 S.W.2d 481, 483 (Tenn. 1994) (noting manufacturer's letter extending consumer's mobile home warranty "requires no consideration in order to be binding.")

These authorities address Nissan's argument in its November 11 Response to Objectors to Settlement that Nissan is entitled to withdraw the coverage announced in its June 2013 letter to LEAF owners "because the class members did

not provide any consideration for it." Dkt. #73 at 16. As the Settlement Agreement acknowledges, the new battery warranty "modif[ies] the New Electric Vehicle Warranty for the Nissan 2011-2012 model year." Settlement Agreement ¶ 33. Therefore, no consideration was necessary to make it binding on Nissan under the Uniform Commercial Code, as adopted by almost all of the states in which class members reside.

                                  Respectfully submitted,

Alex Kozinski                                Marcy Tiffany

                                  November 20, 2013

Explanation or supplementation of terms by course of performance, see Commercial Code § 2202.
Mutual intention to be given effect, see Civil Code § 1636.
Object of contract, see Civil Code § 1595 et seq.
Sense of words, interpretation of contracts, see Civil Code § 1644.
Waiver by buyer of grounds for rejection by failure to particularize, see Commercial Code § 2605.

### Law Review and Journal Commentaries

Accepting late payments—effect on acceleration and foreclosure rights. Louis F. Del Duca, 15 UCC L.J. 99 (1982).

Buyers of used goods and the problem of hidden security interests. Linda J. Peltier (1984) 36 Hastings L.J. 215.

Conditional sales, waiver of conditions. (1926) 14 Cal.L.Rev. 417.

Creditors' claims under California procedure. Elliott Leighton (1962) 14 Hastings L.J. 1.

Impact of the Uniform Commercial Code on California law of sales warranties. Mitchel J. Ezer (1961) 8 UCLA L.Rev. 281.

Law of sales under the Uniform Commercial Code. 17 Alb.L.Rev. 11, 21 (Jan. 1953).

Sales contract terms under UCC. William D. Hawkland, 17 UCC L.J. 195 (1985).

Warranties, disclaimers and the parol evidence rule. 53 Colum.L.Rev. 858 (June 1953).

### Library References

Sales ⚖=54.
WESTLAW Topic No. 343.
C.J.S. Sales §§ 82 to 83, 85 to 87, 108.

**Legal Jurisprudences**
Cal Jur 3d Evid § 352; Sales § 24.

**Treatises and Practice Aids**
Witkin, Summary (9th ed) Contracts § 689.

Witkin, Summary (9th ed) Sales §§ 32, 39, 76.
Witkin, Evidence (3d ed) § 961.

**Forms**
Cal Transactions Forms: Business Transactions §§ 6:36, 24:71, 24:88, 24:89, 24:157, 24:162.

### Notes of Decisions

In general 1
Admissibility of evidence 4
Parties' subsequent conduct 3
Usage of trade 2

**1. In general**

Course of performance by parties is relevant to determine meaning of ambiguous or undefined contract terms. In re Amica, Inc., Bkrtcy. N.D.Ill.1992, 135 B.R. 534.

Writing containing complete description of property, terms of payment, warranty by seller, and covenants as to what was to be done by respective parties, signed and executed by them, was binding contract of sale, notwithstanding failure of seller to require of buyer execution of notes for deferred payments in consonance with clause to that effect in writing; giving of such notes merely being additional evidence of an existing obligation. Hollenbeck v. Lunderville (App. 3 Dist. 1924) 67 Cal.App. 432, 227 P. 679.

**2. Usage of trade**

Generally, persons carrying on trade in which there is a known usage are deemed to have contracted in reference to such usage, unless contrary appears. California Lettuce Growers v. Union Sugar Co. (1955) 45 Cal.2d 474, 289 P.2d 785.

**3. Parties' subsequent conduct**

Under California law, substantial quantum of inconsistency or ambiguity in contract for sale of goods is not prerequisite to consideration of parties' subsequent conduct in determining meaning of contract. Sicor Ltd. v. Cetus Corp., C.A.9 (Cal.)1995, 51 F.3d 848, certiorari denied 116 S.Ct. 170, 516 U.S. 861, 133 L.Ed.2d 111.

**4. Admissibility of evidence**

Under the Uniform Sales Act, evidence of a course of dealing between the parties may be received to negative a warranty implied by law. Crofoot Lumber, Inc. v. Ford (App. 3 Dist. 1961) 12 Cal.Rptr. 639, 191 Cal.App.2d 238.

## § 2209. Modification, rescission and waiver

(1) An agreement modifying a contract within this division needs no consideration to be binding.

(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as

between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirements of the statute of frauds section of this division (Section 2201) must be satisfied if the contract as modified is within its provisions.

(4) Although an attempt at modification or rescission does not satisfy the requirements of subdivision (2) or (3) it can operate as a waiver.

(5) A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver.

(Stats.1963, c. 819, § 2209. Amended by Stats.1967, c. 799, p. 2206, § 3; Stats.1975, c. 7, p. 7, § 1.)

### California Code Comment

*By John A. Bohn and Charles J. Williams*

**Prior California Law**

1. Under prior California law a written contract could be altered "by a contract in writing . . ." Civil Code § 1698. This rule is retained in this section of the code. However, under prior California law a written agreement to modify a pre-existing written contract had to be supported by consideration. See Main Street & Agricultural Park R.R. v. Los Angeles Traction Co., 129 Cal. 301, 61 Pac. 937 (1900). This "pre-existing duty" rule made it difficult for the court to find consideration sufficient to support such an agreement. See Sullivan v. Sullivan, 99 Cal. 187, 33 Pac. 862 (1893) cited in Pacific Finance Corp. v. First Nat. Bank, 4 Cal.2d 47, 47 P.2d 460, (1935). Section 2209(1) eliminates this problem by providing that an oral or written agreement modifying a contract within Division 2 of this code "needs no consideration to be binding."

2. Under prior California law a written contract could be altered by "an executed oral agreement." Civil Code § 1698. The California courts construed the requirement of execution as requiring, in most cases, execution by both parties. Stolenberg v. Harveston, 1 Cal.2d 264, 34 P.2d 472 (1934). However in D. L. Godbey & Sons Const. Co. v. Deane, 39 Cal.2d 429, 246 P.2d 946 (1952) the court held that although an oral modification usually had to be executed by both parties, if the agreement was supported by consideration, then execution by only one of the parties would be sufficient to validate the modification of the prior written contract. Section 2209(2) retains prior California law in requiring execution "by both parties" in the case of oral modification unsupported by consideration and expressly abrogates the rule of D. L. Godbey & Sons v. Deane, 39 Cal.2d 429, 246 P.2d 946 (1952), by providing that the two methods outlined in this section are the "only" means by which a written contract may be modified.

3. While eliminating the requirement of consideration in order to modify a prior written contract, section 2209 does not free one to extort additional consideration by refusing in bad faith to carry out his original commitment. Section 1203 imposes a duty of "good faith" in all transactions. This includes for a merchant (defined in § 2104(1)) the observation of "reasonable commercial standards of fair dealing."

4. Although there was no prior California statute comparable to section 2209(3), the California authorities expressly recognized the doctrine of waiver as an ameliorating factor in cases falling within Civil Code § 1698. See Panno v. Russo, 82 Cal.App.2d 408, 186 P.2d 452 (1947).

5. Under prior California law, a prior oral contract could be modified by a written agreement and no new consideration was required. See Civil Code § 1697. This section is not repealed by the Commercial Code and therefore should be complied with in cases involving modification of an oral contract.

### Changes from U.C.C. (1962 Official Text)

6. Subdivision (2) was changed in the California version in order to retain the rule of Civil Code § 1698. Subsection (2) of the Official Text reads as follows: "(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party."

7. Subdivision (3) is omitted from the California version because of the change made in subdivision (2). Sixth Progress Report to the Legislature by Senate Fact Finding Committee on Judiciary (1959–1961) Part 1, The Uniform Commercial Code, p. 454.

Subsection (3) of the Official Text reads as follows: "(3) The requirements of the statute of frauds section of this Article (Section 2–201) must be satisfied if the contract as modified is within its provisions."

8. In subdivision (4) the reference to subdivision (3) is deleted because of the omission of subdivision (3) from the California version.

### California Code Comment

### 1967 Amendment

### *By Charles J. Williams*

The 1967 amendment adds subdivision (3) to this section. Subdivision (4) is amended by adding the reference to subdivision (3). This amendment brings this subdivision of the California version into conformity with the Official Text.

Originally, subdivision (3) was omitted in the California version because of the California variation in subdivision (2), which still exists. See California Code Comments 6 and 7. However, the Permanent Editorial Board comments that the deletion of subdivision (3) "seems to be a mistake based on failure to see that subsection [subdivision] (1) applies to oral modifications of oral contracts". (Permanent Editorial Board for the Uniform Commercial Code, Report No. 2, p. 35.)

### Law Revision Commission Comment

### 1975 Amendment

Subdivision (2) of Section 2209 is amended to conform to the language of the Uniform Commercial Code.

Recommendation and study relating to oral modification of written contracts. 13 Cal.L. Revision Comm. Reports 301 (1976).

### Uniform Commercial Code Comment

**Prior Uniform Statutory Provision:**

Subsection (1)—Compare Section 1, Uniform Written Obligations Act; Subsections (2) to (5)—none.

**Purposes of Changes and New Matter:**

1. This section seeks to protect and make effective all necessary and desirable modifications of sales contracts without regard to the technicalities which at present hamper such adjustments.

2. Subsection (1) provides that an agreement modifying a sales contract needs no consideration to be binding.

However, modifications made thereunder must meet the test of good faith imposed by this Act. The effective use of bad faith to escape performance on the original contract terms is barred, and the extortion of a "modification" without legitimate commercial reason is ineffective as a violation of the duty of good faith. Nor

can a mere technical consideration support a modification made in bad faith.

The test of "good faith" between merchants or as against merchants includes "observance of reasonable commercial standards of fair dealing in the trade" (Section 2–103), and may in some situations require an objectively demonstrable reason for seeking a modification. But such matters as a market shift which makes performance come to involve a loss may provide such a reason even though there is no such unforeseen difficulty as would make out a legal excuse from performance under Sections 2–615 and 2–616.

3. Subsections (2) and (3) [Subsection 3 inapplicable in California, see California Code Comment, notes 7, 8] are intended to protect against false allegations of oral modifications. "Modification or rescission" includes abandonment or other change by mutual consent, contrary to the decision in Green v. Doniger, 300 N.Y. 238, 90 N.E.2d 56 (1949); it does not include unilateral "termination" or "cancellation" as defined in Section 2–106.

The Statute of Frauds provisions of this Article are expressly applied to modifications by subsection (3). Under those provisions the "delivery and acceptance" test is limited to the goods which have been accepted, that is, to the past. "Modification" for the future cannot therefore be conjured up by oral testimony if the price involved is $500.00 or more since such modification must be shown at least by an authenticated memo. And since a memo is limited in its effect to the quantity of goods set forth in it there is safeguard against oral evidence.

Subsection (2) permits the parties in effect to make their own Statute of Frauds as regards any future modification of the contract by giving effect to a clause in a signed agreement which expressly requires any modification to be by signed writing. But note that if a consumer is to be held to such a clause on a form supplied by a merchant it must be separately signed.

4. Subsection (4) is intended, despite the provisions of subsections (2) and (3) [Subsection 3 inapplicable in California, see California Code Comment, notes 7, 8], to prevent contractual provisions excluding modification except by a signed writing from limiting in other respects the legal effect of the parties' actual later conduct. The effect of such conduct as a waiver is further regulated in subsection (5).

**Cross References:**

Point 1: Section 1–203.

Point 2: Sections 1–201, 1–203, 2–615 and 2–616.

Point 3: Sections 2–106, 2–201 and 2–202.

Point 4: Sections 2–202 and 2–208.

**Definitional Cross References:**

"Agreement". Section 1–201.

"Between merchants". Section 2–104.

"Contract". Section 1–201.

"Notification". Section 1–201.

"Signed". Section 1–201.

"Term". Section 1–201.

"Writing". Section 1–201.

## Historical and Statutory Notes

The 1967 amendment inserted subd. (3), and made changes in conformity therewith.

The 1975 amendment rewrote subd. (2), which had read:

"A written contract within this division may only modified by a written agreement or by an oral agreement fully executed by both parties."

**Uniform law:**

This section is similar to § 2–209 of the Uniform Commercial Code. See Vol. 1 Uniform Laws Annotated, Master Edition or the ULA database on WESTLAW.

## West's California Code Forms

See West's Cal. Code Forms, Coml. § 2209—FORM 1.
See West's Cal. Code Forms, Coml. § 2209—FORM 1.2.
See West's Cal. Code Forms, Coml. § 2209—FORM 2.

See West's Cal. Code Forms, Coml. § 2209—FORM 3.
See West's Cal. Code Forms, Coml. § 2209—FORM 4.
See West's Cal. Code Forms, Coml. § 2209—FORM 5.
See West's Cal. Code Forms, Coml. § 2209—FORM 6.
See West's Cal. Code Forms, Coml. § 2209—FORM 7.
See West's Cal. Code Forms, Coml. § 2209—FORM 8.
See West's Cal. Code Forms, Coml. § 2209—FORM 9.
See West's Cal. Code Forms, Coml. § 2209—FORM 10.
See West's Cal. Code Forms, Coml. § 2209—FORM 10.2.
See West's Cal. Code Forms, Coml. § 2209—FORM 10.4.
See West's Cal. Code Forms, Coml. § 2209—FORM 11.

## Cross References

Burden of proof in general, see Evidence Code § 500 et seq.
Commercial Code,
    General definitions, see Commercial Code § 1201.
    Presumptions affecting burden of producing evidence, see Commercial Code § 1210.
Consideration defined, see Civil Code § 1605.
Definitions of "termination" and "cancellation", see Commercial Code § 2106.
Delay in delivery or nondelivery occasioned by failure of presupposed conditions, see Commercial Code § 2615.
Division 2, definitions and index of definitions, see Commercial Code § 2103.
Evidence as to intent of contracting parties, see Code of Civil Procedure § 1856.
Explanation or supplementation of terms, see Commercial Code § 2202.
Failure of consideration as ground for rescission, see Civil Code § 1689.
Final written expression, see Commercial Code § 2202.
Formal requisites of contract, see Commercial Code § 2201.
Modification and cancellation, oral and written contracts, see Civil Code §§ 1697, 1698.
Obligation of good faith, see Commercial Code § 1203.
Rescission of contracts, see Civil Code § 1688 et seq.
Termination and cancellation defined, see Commercial Code § 2106.
Termination or modification by buyer after notification of delay, see Commercial Code § 2616.
Want of consideration, burden of proof, see Civil Code § 1615.
Written instrument presumptive evidence of consideration, see Civil Code § 1614.

## Law Review and Journal Commentaries

Alteration of written contract by oral account stated. (1919) 7 Cal.L.Rev. 448.

Application of this section. John M. Stockton, 20 Ala.Law. 357 (Oct. 1959).

Cause and consideration in California—a reappraisal. William Noel Keyes (1959) 47 Cal. L.Rev. 74.

Conditional sales, waiver of conditions. (1926) 14 Cal.L.Rev. 417.

Consideration for modification of a contract. 65 W.Va.L.Rev. 330 (June 1963).

Exceptions to consideration requirement in California. James B. Smith (1961) 12 Hastings L.J. 377.

Impact of the Uniform Commercial Code on the law of contracts. Ross C. Tisdale, 39 N.D.L.Rev. 7 (Jan. 1963).

Justice Traynor and the law of contracts. Stewart Macaulay (1961) 13 Stan.L.Rev. 812.

Law of sales under the Uniform Commercial Code. 17 Alb.L.Rev. 11, 21 (Jan. 1953).

The modification mystery: Section 2–209 of the Uniform Commercial Code. John E. Murray, Jr., 32 Vill.L.Rev. 1 (1987).

Modification of sales contract not mentioning place of production by letter of credit naming such place. (1924) 12 Cal.L.Rev. 500.

Modification of sales contracts. Report of California State Bar Committee on Commercial Code, (1962) 37 Cal.St.B.J. 145.

Modification or discharge of contract. Jack L. Rappaport, 20 U.Pitt.L.Rev. 293, 302 (Dec. 1958).

Modifications of sales contracts: Complying with the statute of frauds. Tom L. Holland, 22 UCC L.J. 301 (1990).

Necessary limitations on rule invalidating oral modification of written contracts. Richard Timbie (1972) 23 Hastings L.J. 1575.

New rules for the formation of contract under the proposed Commercial Code. Samuel Williston (Feb. 1950) 63 Harv.L.Rev. 576.

Oral alteration of written contract, expiration, modification or new substituted contract. (1956) 44 Cal.L.Rev. 158.

Oral modification of a written contract. (1952) 4 Hastings L.J. 59.

Parole modification and the statute of frauds: Fitting the pieces together under the Uniform Commercial Code. 21 Campbell L.Rev. 307 (1999).

Parol modification of a written contract. (1952) 40 Cal.L.Rev. 599.

## Library References

Frauds, Statute of ⚖131.
Sales ⚖89.
WESTLAW Topic Nos. 185, 343.
California Jury Instructions—Civil [BAJI].
C.J.S. Frauds, Statute of § 151.
C.J.S. Sales §§ 109 to 114, 117.

**Legal Jurisprudences**
Cal Jur 3d Real Est Topics § 595; Sales §§ 8, 16.

**Treatises and Practice Aids**
Witkin, Summary (9th ed) Contracts §§ 221, 316, 769, 909, 914.

Witkin, Summary (9th ed) Sales § 39.

**Forms**
B-W Cal Civil Practice: Business Litigation §§ 27:26, 40:10.
Cal Transactions Forms: Business Transactions §§ 17:4, 17:83, 17:115, 24:67, 24:77, 24:155, 24:156, 24:157, 24:158, 24:160, 24:161, 24:162, 24:163, 24:165, 24:166, 24:203.

## WESTLAW Electronic Research

See WESTLAW Electronic Research Guide following the Preface.

## Notes of Decisions

Executed oral agreements, modification 2
Modification 1, 2
   In general 1
   Executed oral agreements 2
Notice of rescission 4
Waiver 3

### 1. Modification—In general

While the UCC does not require consideration to modify agreement, valid modification still requires proof of other elements essential to validity of contract, including mutual assent. PMC, Inc. v. Porthole Yachts, Ltd. (App. 4 Dist. 1998) 76 Cal.Rptr.2d 832, 65 Cal.App.4th 882.

Absent a waiver there could not have been an oral modification of contract involving sale of commercial trucks. J. T. Jenkins Co. v. Kennedy (App. 2 Dist. 1975) 119 Cal.Rptr. 578, 45 Cal.App.3d 474.

A modification or alteration, unlike a novation, does not terminate the preexisting contract and alters only those portions of written contract directly affected. Davies Machinery Co. v. Pine Mountain Club, Inc. (App. 5 Dist. 1974) 113 Cal.Rptr. 784, 39 Cal.App.3d 18.

An executed oral agreement would serve as a modification or release of a written agreement without regard to presence or absence of a consideration. Price v. Price (App. 2 Dist. 1938) 24 Cal.App.2d 462, 75 P.2d 655.

Irrespective of consideration, executed oral agreement might constitute modification of written agreement. Julian v. Gold (1931) 214 Cal. 74, 3 P.2d 1009.

### 2. —— Executed oral agreements, modification

An oral contract cannot alter a written contract unless the former has been fully executed. Harrison v. Hanson (App. 1958) 165 Cal.App.2d 370, 331 P.2d 1084.

The fact that work has actually started under written contract does not preclude alteration of contract by executed oral agreement between parties. Keeble v. Brown (App. 1954) 123 Cal.App.2d 126, 266 P.2d 569.

An oral modification of a written contract is effective only to the extent that it is "executed", that is, carried out. Southern Pac. Milling Co. v. Billiwhack Stock Farm (App. 2 Dist. 1942) 50 Cal.App.2d 79, 122 P.2d 650, rehearing granted.

Under Civ.C. § 1698, an oral agreement is not "executed" unless it has been fully performed by both parties. Walther v. Occidental Life Ins. Co. (App. 1 Dist. 1940) 40 Cal.App.2d 160, 104 P.2d 551.

### 3. Waiver

Where, by way of answer and counterclaim, debtor, who had surrendered trucks in accordance with oral agreement, alleged that by such agreement he and secured creditor had entered into modification of contract for sale of the trucks, even though there could not have been an oral modification to such a contract, court committed reversible error in failing to make findings as to whether the parties had entered

into the agreement, which might have been basis of claim of waiver, and whether the agreement modified the contract. J. T. Jenkins Co. v. Kennedy (App. 2 Dist. 1975) 119 Cal.Rptr. 578, 45 Cal.App.3d 474.

The rule against varying written instrument by parol or altering written contract other than by written contract or executed oral agreement is subject to the exception that a party may waive performance of condition by conduct or representations, or be estopped to deny such waiver. Panno v. Russo (App. 2 Dist. 1947) 82 Cal.App.2d 408, 186 P.2d 452.

Rights secured by contract may be waived by conduct without written agreement. Miller & Lux v. San Joaquin Light & Power Corp. (App. 4 Dist. 1932) 120 Cal.App. 589, 8 P.2d 560.

**4. Notice of rescission**

Where contract between seller and buyer of grain stated that payment was to be made when crop was delivered to warehouse, 60 per cent. of price to be paid by July 1st, balance at time of shipment on destination weights, seller was under duty to deliver grain and notify buyer of weight before payment could be demanded, as respected seller's right to rescind upon buyer's failure to make payment by July 1st, and seller was required to indicate her intention to rescind by notice or some overt act. Grange Co. v. McCabe (App. 3 Dist. 1938) 26 Cal.App.2d 597, 80 P.2d 135.

## § 2210. Delegation of performance; assignment of rights

(1) A party may perform his or her duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having his or her original promisor perform or control the acts required by the contract. No delegation of performance relieves the party delegating of any duty to perform or any liability for breach.

(2) Except as otherwise provided in Section 9406, unless otherwise agreed, all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him or her by his or her contract, or impair materially his or her chance of obtaining return performance. A right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his or her entire obligation can be assigned despite agreement otherwise.

(3) The creation, attachment, perfection, or enforcement of a security interest in the seller's interest under a contract is not a transfer that materially changes the duty of, or increases materially the burden or risk imposed on, the buyer or impairs materially the buyer's chance of obtaining return performance within the purview of subdivision (2) unless, and then only to the extent that, enforcement actually results in a delegation of material performance of the seller. Even in that event, the creation, attachment, perfection, and enforcement of the security interest remain effective, but (A) the seller is liable to the buyer for damages caused by the delegation to the extent that the damages could not reasonably be prevented by the buyer, and (B) a court having jurisdiction may grant other appropriate relief, including cancellation of the contract for sale or an injunction against enforcement of the security interest or consummation of the enforcement.

(4) Unless the circumstances indicate the contrary, a prohibition of assignment of "the contract" is to be construed as barring only the delegation to the assignee of the assignor's performance.

(5) An assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of rights and, unless the language or the circumstances (as in an assignment for security) indicate

motorist coverage provided to the insured." T.C.A. § 56–7–1202 (1989).

Application of these statutes to the case before the Court shows that plaintiff Shari West meets the two requirements necessary to claim benefits under uninsured motorist coverage: she is entitled to recover compensatory damages from Pratt, and Pratt is the owner of an uninsured motor vehicle. The liability of an uninsured motorist insurance carrier, in the absence of a specific provision in the contract, is limited to compensatory damages. *Carr v. Ford,* 833 S.W.2d 68, 68–69 (Tenn.1992). The statutory maximum liability for compensatory damages is the amount of uninsured motorist coverage provided in the policy, which in this case was $100,000 for Shari West, less the "sum of limits collectible under all liability"[1] policies "applicable to the bodily injury ... of the insured," which in this case was $25,000. Since, under the statute, State Farm is not required to pay "the sum of limits collectible under all liability" policies, its liability is the amount whereby the judgment for compensatory damages, $46,236.80, exceeds the limit of $25,000 collectible under Tennessee Farmers's liability policy, or $21,236.80.

The liability of Tennessee Farmers to the plaintiffs is not at issue. Tennessee Farmers and the plaintiffs are at liberty to adjust their rights and liabilities with regard to the judgment as they have agreed or may agree. However, their agreement does not affect State Farm's liability, which is determined by statute.



---

1.　T.C.A. § 56–7–1201(d).

**Lincoln C. PASKELL, Plaintiff/Appellant,**

v.

**NOBILITY HOMES, INC., Defendant/Appellee.**

Supreme Court of Tennessee, at Knoxville.

Feb. 7, 1994.

Buyer of mobile home brought action against manufacturer for breach of warranty and breach of contract. The Circuit Court, Knox County, Wheeler Rosenbalm, J., entered judgment for buyer, and manufacturer appealed. The Court of Appeals, 845 S.W.2d 750, reversed and remanded, and buyer appealed. The Supreme Court, O'Brien, J., held that limitations period did not begin to run when buyer first discovered defect in roof, but, rather, began to run when manufacturer made known its refusal to honor its obligations under manufacturer's letter, which modified terms of sale contract by unconditionally guaranteeing mobile home's roof and rafter system for period of five years.

Court of Appeals reversed; judgment reinstated.

1. Sales ⚭10

Although mobile home is treated as real property for purposes of tax assessment, transaction involving sale of mobile home is considered sale of personal property and is subject to terms and conditions found in Uniform Commercial Code (UCC). T.C.A. § 47–2–101 et seq.

2. Sales ⚭89

Manufacturer's letter, which modified terms of sales contract by unconditionally guaranteeing mobile home's roof and rafter system for period of five years, required no consideration in order to be binding. T.C.A. § 47–2–209(1).

**3. Limitation of Actions ⚖=46(9)**

Cause of action for breach of contract for sale accrues, for limitations purposes, when tender of delivery is made, unless warranty explicitly extends to future performance of goods. T.C.A. § 47-2-725(2).

**4. Limitation of Actions ⚖=47(1)**

Manufacturer's warranty, which unconditionally guaranteed roof and rafter system of mobile home for period of five years from date of letter, extended to future performance of goods and activated statute of limitations provision stating that cause of action accrues when tender of delivery is made unless warranty explicitly extends to future performance of goods. T.C.A. § 47-2-725(2).

**5. Limitation of Actions ⚖=95(9)**

In explicit warranty contract, claim accrues and statute of limitations begins to run when plaintiff discovers or should have discovered defendant's refusal or inability to maintain goods as warranted in contract. T.C.A. § 47-2-725(2).

**6. Limitation of Actions ⚖=95(9)**

When manufacturer sent letter, which modified terms of sale contract by unconditionally guaranteeing mobile home's roof and rafter system for period of five years, buyer's action against manufacturer for breach of warranty and breach of contract did not accrue when buyer first discovered defect in roof, but, rather, accrued when manufacturer made known its refusal to honor its obligations under extended warranty. T.C.A. § 47-2-725(2).

---

D. Scott Hurley and David L. Buuck, Knoxville, for plaintiff/appellant.

G. Wendell Thomas, Jr. and Rex A. Dale, Knoxville, for defendant/appellee.

## OPINION

O'BRIEN, Justice.

The determinative issues in this appeal concern the effectiveness of a written extended warranty on the sale and repair of a mobile home, the obligations of the warrantor under the terms of an extended warranty and the properly applicable statute of limitations on such a warranty.

On 26 October 1979, the plaintiff, Lincoln Paskell, purchased a "double-wide" mobile home from Emert's Mobile Home Sales in Knoxville, Tennessee. The home had been manufactured by the defendant, Nobility Homes, Incorporated. The sale of the home included a limited one-year warranty against defects in the materials and workmanship.

Sometime after the purchase of the home and prior to 9 January 1980, two units comprising the double-wide were delivered and set up on the plaintiff's property. The two halves were placed upon a foundation and connected together. At the apex of the cathedral ceiling in the home's living room, at the point where the two halves were joined together, there was a prominent "swag" in the roof. Because of this pronounced "swag," the plaintiff informed the manufacturer in a telephone conversation that he wanted a new roof installed on the home. The plaintiff further threatened to return the home if the roof was not fixed to his satisfaction.

To avoid having Mr. Paskell return the home, Nobility sent a letter, signed by the corporation's general manager, Bruce Stockman, and dated 9 January 1980. The letter stated:

> Let this be formal notice of an extended warranty period on the roof of your Nobility Home. We agree to guarantee your roof and rafter system unconditionally for a five year period from today's date.

Apparently, the mobile home's roof was susceptible to water leakage during inclement weather from the time it had been originally set up on the plaintiff's property. Nobility attempted to repair the defects on at least four (4) occasions, but was never able to remedy the problem. In a letter dated 27 August 1984, Nobility wrote to the plaintiff denying any responsibility for the leak in the roof, stating that the problem was one of "condensation" and not "structural" damage or defect. This letter was also signed by general manager, Bruce Stockman. There was further correspondence between Nobility and Mr. Paskell after August 1984, in which

the plaintiff evidently continued to request satisfaction from the defendant, but to no avail.

On 26 August 1986, the plaintiff filed suit claiming breach of warranty and breach of contract. The trial judge found for the plaintiff and awarded $10,000, to cover the plaintiff's cost of employing an independent roofing contractor to replace all the rafters and re-plywood and re-shingle the roof. The contractor also furnished additional repairs made necessary because of water damage.

Upon the defendant's appeal, the Court of Appeals found that the plaintiff's claim was barred by the four-year statute of limitations under T.C.A. § 47–2–725. *See* 845 S.W.2d 750. We agree that T.C.A. § 47–2–725 is properly applicable to the present case. However, we must disagree with the appeal court's conclusion that the plaintiff's cause is barred by time limitations.

[1] Although a mobile home in Tennessee is treated as real property for the purposes of tax assessment, a transaction involving the sale of a mobile home is considered the sale of personal property and is subject to the terms and conditions found in the Uniform Commercial Code. T.C.A. § 47–2–101 *et seq.; also see generally, Bank of Commerce v. Waddell*, 731 S.W.2d 61 (Tenn.App.1986); *and Belle–Aire Villege, Inc. v. Ghorley*, 574 S.W.2d 723 (Tenn.1978). In *Layman v. Keller Ladders, Inc.*, 224 Tenn. 396, 455 S.W.2d 594, 596 (1970), this Court held:

> [W]e are of the opinion that Section 47–2–725 should control in all actions wherein a breach of warranty of a contract of sale is alleged ...

The holding in *Layman*, that limitations on breach of warranty actions are controlled by the terms of 47–2–725, was reaffirmed in *McCroskey v. Bryant Air Conditioning Company*, 524 S.W.2d 487, 491–92 (Tenn. 1975).

> [W]e are content to hold that this statute [47–2–725], as adopted by our legislature, contemplates that actions based on breach of warranty, be brought within four years after a tender of delivery is made, *subject to the exceptions contained therein*. (Emphasis added).

[2] In the present case, the plaintiff alleges a breach of warranty involving the sale of tangible personal property. The action is based upon the 9 January 1980 letter modifying the terms of the sales contract by *unconditionally* guaranteeing the mobile home's roof and rafter system for a period of five (5) years. The defendant's January 1980 warranty letter requires no consideration in order to be binding. See T.C.A. § 47–2–209(1).

Unquestionably, T.C.A. § 47–2–725 is the controlling statute of limitations concerning the filing of a case such as this, and provides in pertinent part:

> (1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, **except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.** (Emphasis added).

[3, 4] Under subsection (2), a cause of action accrues when tender of delivery is made, unless the warranty explicitly extends to the future performance of the goods. If the warranty is not one that explicitly extends to future performance of the goods, then the exception in subsection 2 simply does not come into play. Thus, the crucial determination to be made is whether the language of the particular warranty involved explicitly extends to future performance of the goods. *Poppenheimer v. Bluff City Motor Homes*, 658 S.W.2d 106 (Tenn.App.1983). In *Poppenheimer*, the Court found that a warranty to merely "repair is not one that explicitly extends to future performance of the goods." *Id.* at 111. However, unlike the warranty discussed in *Poppenheimer*, the defendant's January 1980 letter was not merely a warranty to repair. The terms of the

defendant's warranty *unconditionally* guaranteed the roof and rafter system of the plaintiff's mobile home for a period of five years from the date of the letter. Clearly, such an unconditional warranty extends to future performance of the goods and activates the exception in subsection (2) of 47-2-725.

Since the particular facts of this case activate the exception in T.C.A. § 47-2-725(2), then the determinative query naturally becomes; what constitutes a breach of warranty that would begin the running of the statute of limitations?

[5] The defendant argues that the four-year statute of limitations controls in this instance and, even if the defendant's warranty extends to future performance, the action accrued and the limitations began to run when the plaintiff first discovered the defect in the roof, prior to 9 January 1980. Therefore, the plaintiff's action, filed on 26 August 1986, more than six years after discovery of the defect, is barred by the running of the four-year statute of limitations. This argument is to no avail. In an analogous case coming from the State of Colorado the court clearly stated the applicable rule:

> "[In] an explicit warranty contract, ... the claim accrues and the statute of limitations begins to run, when the plaintiff discovers or should have discovered the defendants refusal or inability to maintain the goods as warranted in the contract." *Smith v. Union Supply Co.*, 675 P.2d 333, 335 (Col. App.1983).

[6] By its terms, the defendant's warranty, expressed in its 9 January 1980 letter, explicitly extended to future performance. Under T.C.A. § 47-2-725(2), no breach of the warranty could occur until Nobility refused to honor its obligations and the plaintiff's discovery of the breach. Not until late in the summer of 1984, in the 27 August letter, did the defendant make known its refusal to honor its obligations under the extended warranty. It is on that date that the plaintiff's cause of action accrued and the four-year statute of limitations began to run. Therefore, the plaintiff's claim, filed on 26 August 1986, is not barred by the running of the statute of limitations. The holding of the Court of Appeals is reversed and the judgment of the trial court is reinstated in its entirety. Costs of appeal are taxed against the defendant.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

DAUGHERTY, not participating.



William N. MORRIS, et al.,
Plaintiffs/Appellees,

v.

William R. SNODGRASS, et al.,
Defendants/Appellants.

Court of Appeals of Tennessee,
Western Section,
at Jackson.

Feb. 16, 1993.

Published pursuant to the provisions
of Rule 11 of the Rules of the
Court of Appeals.

Mayor of county, superintendent of county workhouse and county sheriff brought declaratory judgment action against comptroller of the treasury, commissioner of the department of corrections, and state Attorney General, seeking to have state statutes declared unconstitutional. The Chancery Court, Shelby County, D.J. Alissandratos, Chancellor, denied state officials' motion to dismiss, and they appealed. The Court of Appeals, Tomlin, P.J.(W.S.), held that statute pertaining to venue in transitory actions was not applicable because suit of this nature against the state was not transitory, but local.

Reversed.

1. Declaratory Judgment ⚖=271

Statute pertaining to venue in transitory actions was not applicable to county officials' declaratory judgment action against comp-

CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury, that on November 20, 2013, I served NOTICE OF SUPPLEMENTAL AUTHORITIES on the parties by serving its counsel of record electronically, having verified on the court's CM/ECF website that such counsel is currently on the list to receive emails for this case, and that there are no attorneys on the manual notice list.

Dated: November 20, 2013                                                         */s/ Marcy Tiffany*